FILED _____ ENTERED
LODGED _____ RECEIVED

MAR 13 2008   DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

08-CV-00425-CMP

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YOUNTVILLE INVESTORS, LLC, a Washington limited liability company,

    Plaintiff,

v.

BANK OF AMERICA, N.A., a national banking association chartered in North Carolina,

    Defendant.

NO. C08-0425M

COMPLAINT FOR DECLARATORY JUDGMENT, RESTITUTION, AND DAMAGES

Plaintiff Yountville Investors, LLC, by and through its attorneys Tousley Brain Stephens PLLC, alleges as follows:

## I. THE PARTIES

1.1    Plaintiff Yountville Investors, LLC ("Yountville") is a Washington limited liability company duly authorized and registered to do business in the state of Washington and has paid all applicable taxes, fees and assessments due to the state of Washington.

1.2    Bank of America, N.A. ("Bank"), is a national banking association chartered and headquartered in Charlotte, North Carolina, that does business throughout the United States. Under 28 U.S.C. § 1348, Defendant Bank is deemed a citizen of North Carolina. Defendant Bank does business in and maintains a branch in the City of Seattle, King County, Washington.

COMPLAINT FOR DECLARATORY JUDGMENT, RESTITUTION, AND DAMAGES - 1
CASE NO.
4738/001/216000.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

ORIGINAL

## II. JURISDICTION

2.1 This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a), because this is an action in which the controversy is between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000.

## III. VENUE

3.1 Defendant Bank is deemed to reside in this District by virtue of maintaining a branch herein.

3.2 In addition, a substantial part of the events or omissions giving rise to these claims are situated in this District.

3.3 In addition, Defendant Bank, through its branch and its business of conducting banking and related services in this District, has established sufficient contacts in this District such that it is subject to personal jurisdiction here. Pursuant to 20 U.S.C. § 1391(c), therefore, Defendant Bank is further deemed to reside in this District.

3.4 As such, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

3.5 Nothing in the Interest Swap (discussed below) prohibits venue in this District or mandates venue in another district.

## IV. FACTUAL ALLEGATIONS

4.1 In 2006, Yountville sought construction financing from Defendant Bank's Seattle branch relating to the development of a proposed 62-room inn with restaurant and spa, to be located in Napa Valley, California.

4.2 Defendant Bank's Seattle branch provided term sheets setting forth its financing proposal. For example, the October 17, 2006 term sheet proposed a loan principal of $30,500,000, which amount had been approved on a preliminary basis by Defendant Bank. The proposed loan term was 36 months plus two, twelve-month extensions.

4.3 The October 17, 2006 term sheet also proposed a floating interest rate on the loan based on the 30-day LIBOR rate plus 1.65 percent. (LIBOR is the acronym for London

COMPLAINT FOR DECLARATORY JUDGMENT, RESTITUTION, AND DAMAGES - 2
CASE NO.
4738/001/216000.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

1  Interbank Offered Rate, published daily by the British Bankers Association.) In connection with this floating interest rate proposal, the term sheet indicated the "[b]orrower may elect to use and Bank will provide interest rate derivative products to fix the interest rate on all or a portion of the Loan."

4.4     Following these term sheets, Yountville and Defendant Bank's Seattle branch continued negotiations regarding the construction loan. By February 2007, Yountville and Defendant Bank's Seattle branch had reached an agreement on all material terms of the construction loan and were in the process of completing documentation for the loan's closing.

4.5     While working toward the loan's closing, the loan officer introduced Yountville to an officer from Defendant Bank's derivatives department. The derivatives officer suggested the creation of an interest rate swap between the parties to enable Yountville to fix its interest rate on the loan. The sole purpose of the proposed swap, as advertised by Defendant Bank and as envisioned by the parties, was to fix the floating interest rate on the loan. Defendant Bank's officers additionally represented that, absent the interest rate swap, Yountville faced the risk of having to pay higher interest rates under the floating rate. Defendant Bank repeatedly contacted Yountville about the Interest Swap and provided representations and informal opinions that the interest rates had been increasing and were likely to continue to increase in the near future. Based on Defendant Bank's representations, Yountville was amenable to an interest rate swap to fix its interest rate on the loan.

4.6     Defendant Bank thereafter prepared the documentation for the interest rate swap (referred to herein as "Interest Swap") in connection with the loan. The Interest Swap had a term of four years and was based on a notational amount of $30 million. The envisioned mechanics of the Interest Swap were as follows: instead of paying the floating interest rate attached to the loan, Yountville would pay a fixed interest rate of 4.99 percent throughout the term of the loan. To the extent the floating rate dropped below the fixed rate, Yountville would therefore be making an additional payment to Defendant Bank beyond that provided for in the

COMPLAINT FOR DECLARATORY JUDGMENT, RESTITUTION,
AND DAMAGES - 3
CASE NO.
4738/001/216000.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

note, calculated based on the difference between its fixed interest rate and the lower floating rate. On the other hand, to the extent the floating rate exceeded Yountville's fixed rate, then Defendant Bank would be obligated to pay to Yountville the difference between the floating rate and Yountville's lower fixed rate.

4.7  Yountville intended to sign and agree to the Interest Swap after the loan closed. On March 12, 2007, Yountville and Defendant Bank believed that documentation for the loan was almost complete and that closing would occur within one week. Also on March 12, 2007, Defendant Bank encouraged Yountville to sign and agree to the Interest Swap immediately, even prior to the closing of the loan. Based on Defendant Bank's representations and the parties' mutual understanding that the construction loan would close within the next week, Yountville signed documents associated with the Interest Swap.

4.8  There were three documents associated with the Interest Swap:

4.8.1  ISDA Master Agreement. The ISDA Master Agreement, dated March 9, 2007, is a form contract promulgated by the International Swap Dealers Association, Inc. Yountville's representative signed this document on March 12, 2007. Yountville did not receive a copy of the ISDA Master Agreement countersigned by a representative of Defendant Bank until November 2, 2007. The countersignature by Defendant Bank's Senior Vice President failed to provide a date of signature in the space provided.

4.8.2  Schedule to the Master Agreement. The Schedule, dated March 9, 2007, purports to modify and supplement terms in the ISDA Master Agreement. Yountville's representative also signed this document on March 12, 2007. Yountville did not receive a copy of the Schedule countersigned by a representative of Defendant Bank until November 2, 2007. Defendant Bank's countersignature was undated.

4.8.3  Confirmation. The Confirmation, dated March 14, 2007, contained additional terms to the ISDA Master Agreement and Schedule and attached a payment schedule. Yountville did not receive a copy of the Confirmation countersigned by a

COMPLAINT FOR DECLARATORY JUDGMENT, RESTITUTION, AND DAMAGES - 4
CASE NO.
4738/001/216000.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

representative of Defendant Bank until November 2, 2007. Defendant Bank's countersignature was undated.

 4.9 It was the intent and understanding of both parties that that the purpose of the Interest Swap was to fix an interest rate on a specific construction loan, and not to speculate on interest rates generally for investment or other purposes. Both parties expected and believed that the construction loan would close no later than one week after Yountville signed the Interest Swap. Both parties understood that, without an underlying construction loan, their Interest Swap transaction would make no sense. Simply put, it was the intent and understanding of both parties that the closing of the construction loan formed the basis of the Interest Swap and was the basic assumption or condition upon which the Interest Swap was made. It was Yountville's belief and understanding at the time that, if the construction loan was never consummated, then the Interest Swap would not take effect.

 4.10 The terms of the Interest Swap documents reflected these intentions and understandings of the parties; for example:

  4.10.1 These documents assume the existence of a consummated and enforceable construction loan between the parties. The Schedule repeatedly refers to the "Loan Agreement," which is defined therein as "the Construction Loan Agreement dated as of _____, 200\_" between Yountville and Defendant Bank. Moreover, the Schedule does not contain a mandatory arbitration provision, but it incorporates the arbitration provision allegedly contained in the assumed-to-exist Loan Agreement. The ISDA Master Agreement and Confirmation similarly refer to the "Credit Support Documents" underlying the transaction, which are also assumed to exist.

  4.10.2 None of these documents contain a single term referring to or envisioning the event of the loan not closing. While the Schedule designates an "Event of Default" under the Interest Swap if a "prepayment is made" on the Loan Agreement or upon "the termination of the Loan Agreement for any reason," none of the documents discuss

COMPLAINT FOR DECLARATORY JUDGMENT, RESTITUTION, AND DAMAGES - 5
CASE NO.
4738/001/216000.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

potential consequences and outcomes if the Loan Agreement is never consummated in the first place.

4.11    On or around March 22, 2007, Yountville signed the documentation relating to the construction loan with Defendant Bank, including the deed of trust. The loan did not close, however, due to indemnity issues raised by the title company, First American Title Company of Napa. The parties worked to resolve these issues and agreed to reschedule the closing date to June 1, 2007.

4.12    Yountville began to receive subcontractor bids that were higher than originally estimated, and therefore sought a higher principal on the construction loan amount from Defendant Bank. On July 16, 2007, Defendant Bank required the submission of new budgets and other information and set a new deadline for closing on October 10, 2007. Specifically, Defendant Bank indicated that if the loan did not close by this date, then Defendant Bank would rescind the term sheets and "unwind the current SWAP agreement." Yountville made all required submissions to Defendant Bank to support the higher principal amount.

4.13    Meanwhile, Defendant Bank and Yountville made monthly payments under the Interest Swap based on calculations of the 30-day LIBOR rate. These payments were made with the continued expectation and understanding that the underlying construction loan would soon close.

4.14    On October 12, 2007, the loan officer from Defendant Bank's Seattle branch informed Yountville that Defendant Bank had rejected the final terms of the proposed loan, even though the loan officer from the Seattle branch had advocated that the proposed loan be accepted.

4.15    On October 24, 2007, Defendant Bank provided a final term sheet to Yountville, which failed to include sufficient financing to fund Yountville's development. As a consequence, Yountville pursued construction financing from another banking institution.

COMPLAINT FOR DECLARATORY JUDGMENT, RESTITUTION, AND DAMAGES - 6
CASE NO.
4738/001/216000.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

4.16   Defendant Bank and Yountville never entered into any loan agreement. Thus, the basis and the fundamental purpose of the Interest Swap, as the parties understood it, were frustrated, and the condition precedent underlying the Interest Swap was unfulfilled.

4.17   Between March and October 2007 and thereafter, LIBOR interest rates had dropped dramatically, resulting in a windfall to Defendant Bank under the Interest Swap. On October 24, 2007, Defendant Bank asserted that it would seek a "settlement amount" from Yountville if the construction loan did not close, based on Defendant Bank's "exposure for the unexpired term" of the Interest Swap, even though the Interest Swap documents did not provide for the payment of such a "settlement amount" in these circumstances. On October 31, 2007, Defendant Bank estimated this "settlement amount" to be $588,266, though it noted this amount "is very much subject to change." On November 2, 2007, Defendant Bank noted interest rates had dropped again, resulting in a new "settlement amount" of $604,912.25. In February 2008, Defendant Bank indicated that interest rates had continued to drop and that it was entitled to up to $1.9 million in damages under the Interest Swap.

4.18   Yountville has continued to make monthly payments to Defendant Bank under the Interest Swap to avoid Defendant Bank asserting an "event of default" and claiming the "settlement amount." Yountville will continue to make these payments, where appropriate, under protest.

4.19   Defendant Bank has asserted that the Interest Swap constitutes an independent and enforceable agreement, despite the failure of the construction loan to close. Such an agreement, if enforceable, constitutes a "security" under RCW 21.20.005(12)(a).

## V. FIRST CLAIM FOR RELIEF
(Declaratory Judgment)

5.1   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

COMPLAINT FOR DECLARATORY JUDGMENT, RESTITUTION, AND DAMAGES - 7
CASE NO.
4738/001/216000.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

5.2     Real and justiciable disputes exist between the parties with respect to their respective rights and responsibilities under the Interest Swap, including the ISDA Master Agreement, Schedule, and Confirmation.

5.3     Plaintiff is entitled to a declaratory judgment finding and concluding that, among other things: (a) there was no mutual assent between the parties regarding the Interest Swap; (b) Interest Swap should be rescinded, void and unenforceable due to the failure of a condition precedent to occur; (c) Plaintiff's performance under the Interest Swap has been and is excused because the principal purpose of the Interest Swap has been substantially frustrated; and (d) moneys exchanged under the Interest Swap should be returned to the payor.

## VI. SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

6.1     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

6.2     Defendant received monies as a result of the Interest Swap, and Defendant wrongfully accepted and retained these benefits to the detriment of Plaintiff.

6.3     Defendant's enrichment at the expense of Plaintiff was unjust.

6.4     As a result of Defendant's wrongful conduct, Plaintiff is entitled to restitution of all profits, benefits, and other compensation obtained by Defendant.

## VII. THIRD CLAIM FOR RELIEF
### (Violation of Washington's Consumer Protection Act, RCW 19.86 *et seq.*)

7.1     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

7.2     The enforcement of Washington's Consumer Protection Act, RCW 19.86 *et seq.*, relating to Washington parties and events taking place in Washington is a fundamental policy of the State of Washington.

COMPLAINT FOR DECLARATORY JUDGMENT, RESTITUTION, AND DAMAGES - 8
CASE NO.
4738/001/216000.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

7.3   Defendant engaged in unfair or deceptive acts or practices when it: (i) encouraged Plaintiff to sign the Interest Swap documents prior to the closing of a loan; (ii) made representations to Plaintiff regarding likely movements in the LIBOR rate during discussions on the Interest Swap; (iii) failed to disclose that it would claim the Interest Swap would be enforceable even if the underlying loan failed to close; (iv) failed to disclose that it would claim a settlement amount if the underlying loan failed to close; (v) failed to promptly return countersigned and dated copies of the Interest Swap documents to Plaintiff; and (vi) represented that the Interest Swap remained enforceable after the underlying loan failed to close.

7.4   Defendant's unfair or deceptive acts or practices occurred in Defendant's trade or business.

7.5   Defendant actively solicited Plaintiff to enter into the Interest Swap, and the parties had unequal bargaining positions.

7.6   As a direct and proximate cause of Defendant's unfair or deceptive acts or practices, Plaintiff has suffered actual damages to its business and property.

7.7   As a result of Defendant's unfair and deceptive practices, Plaintiff is entitled to compensatory and treble damages, attorneys' fees, and costs pursuant to RCW 19.86 *et seq.*

## VIII. FOURTH CLAIM FOR RELIEF
### (Violation of Washington State Securities Act, RCW 21.20 *et seq.*)

8.1   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

8.2   The enforcement of the Washington State Securities Act, RCW 21.20 *et seq.*, is a fundamental policy of the State of Washington.

8.3   Defendant's Interest Swap is a security within the meaning of the Washington State Securities Act, RCW 21.20.010 *et seq.*

COMPLAINT FOR DECLARATORY JUDGMENT, RESTITUTION,
AND DAMAGES - 9
CASE NO.
4738/001/216000.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

8.4     Defendant is a seller of a security under RCW 21.20.430(1) because it offered or sold the Interest Swap to Plaintiff.

8.5     By reason of the conduct alleged herein, Defendant violated RCW 21.20.010(1) by employing a device, scheme or artifice to defraud Plaintiff.

8.6     By reason of the conduct alleged herein, Defendant violated RCW 21.20.010(2) in that it made untrue statements of material facts or omitted to state facts necessary in order to make statements made, in light of the circumstances in which they were made, not misleading.

8.7     By reason of the conduct alleged herein, Defendant violated RCW 21.20.010(3) in that it engaged in acts, practices, or courses of business which operated as a fraud or deceit upon Plaintiff.

8.8     By reason of the conduct alleged herein, Defendant violated RCW 21.20.140 in that it offered and sold unregistered securities without exemption from registration.

8.9     Plaintiff relied upon Defendant's misrepresentations and omissions relating to the offer and sale of the Interest Swap.

8.10    As a result, Plaintiff has suffered damages, and Defendant is liable to Plaintiff for the relief provided for in RCW 21.20.430(1).

## IX. RELIEF REQUESTED

Plaintiff requests the Court enter judgment against Defendant, as follows:

9.1     For declaratory judgment in accordance with Plaintiff's first claim for relief;

9.2     For restitution and disgorgement of moneys and benefits conferred from Plaintiff to Defendant, in an amount to be proven at trial, in accordance with Plaintiff's second claim for relief;

9.3     For compensatory damages, attorneys' fees, costs, and treble damages up to $10,000 for each violation of the Washington Consumer Protection Act, RCW 19.86, *et seq.*, in an amount to be proven at trial, in accordance with Plaintiff's third claim for relief;

COMPLAINT FOR DECLARATORY JUDGMENT, RESTITUTION, AND DAMAGES - 10
CASE NO.
4738/001/216000.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

| | |
|---|---|
| 1 | 9.4     For the rescission of the sale of the Interest Swap, damages, and all other relief |
| 2 | provided for in RCW 21.20.430(1) of the Washington State Securities Act, in accordance with |
| 3 | Plaintiff's fourth claim for relief; |
| 4 | 9.5     For an award of Plaintiff's reasonable attorneys' fees and costs; |
| 5 | 9.6     For an award of pre-judgment and post-judgment interest, as provided by law; |
| 6 | 9.7     For leave to amend the Complaint to conform to the evidence presented at trial; |
| 7 | and |
| 8 | 9.8     For such other and further relief as the court deems just and equitable. |
| 9 | DATED this 13th day of March, 2008. |

TOUSLEY BRAIN STEPHENS PLLC

By: /s/ Janissa A. Strabuk

David D. Hoff, WSBA #99
dhoff@tousley.com
Janissa A. Strabuk, WSBA #21827
jstrabuk@tousley.com
Michael J. Estok, WSBA #36471
mestok@tousley.com
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Telephone: (206) 682-5600
Facsimile: (206) 682-2992

*Attorneys for Plaintiff*

COMPLAINT FOR DECLARATORY JUDGMENT, RESTITUTION,
AND DAMAGES - 11
CASE NO.
4738/001/216000.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992